UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROOFERS LOCAL 149 JOINT
    APPRENTICESHIP FUND,

                Plaintiff,

v.                                                       CASE NO. 06-13681
                                                      HON. LAWRENCE P. ZATKOFF
ANN ARBOR ROOFING CO.,
KERILYN SHEPPARD,
JEFF STEPP,
SUE ADKINS, and
KRISTIN SHEPPARD,

                Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 8, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment [dkt 14]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED.

## II. BACKGROUND

The dispute before the Court concerns two local unions operating in different jurisdictions within Michigan, Local 70 and Local 149, each of which represent members of the United Union

of Roofers, Waterproofers & Allied Workers. Plaintiff is a fund established for the benefit of Local 149 and administered pursuant to Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and the Employment Retirement Income Security Act, 29 U.S.C. § 1001 ("ERISA"). Defendant Ann Arbor Roofing Company, located in Ann Arbor, Michigan, is based in Local 70's jurisdiction. As a contractor operating within Local 70's jurisdiction, Ann Arbor Roofing is a signatory to the Local 70 collective bargaining agreement ("CBA"). Because Ann Arbor Roofing occasionally pursues employment opportunities in Local 149's jurisdiction, it is also a signatory to a CBA with the Roofers Local 149 Union.[1]

Pursuant to the Local 149 CBA, out-of-town contractors, such as Defendants, must pay their employees Local 149 wages and fringe benefits when conducting business within Local 149's jurisdiction if the Local 149 wages and fringe benefits are higher than the out-of-town contractor's. This so-called "competition-leveling clause" protects Local 149's members by effectively forbidding contractors from gaining a competitive edge by lowering wages and fringe benefits within Local 149's jurisdiction. Under the Local 149 CBA, if Local 149's wages are higher than the out-of-town contractor's, the out-of-town contractor must pay its employees Local 149 wages. The formula differs slightly when a differential is attributable to fringe benefits: if the Local 149 fringes are higher than those of an out-of-town contractor conducting business in Local 149's jurisdiction, the differential between the Local 149 fringes and the out-of-town fringes must be paid to Plaintiff.

Because Ann Arbor Roofing is a signatory to both the Local 149 and the Local 70 CBAs,

---

[1] Both the Local 70 and the Local 149 CBAs extend for periods of three years. At all relevant times, Ann Arbor Roofing was a signatory to both CBAs. In the interest of simplicity, the provisions cited by this Court are attributed to the CBAs covering the period between 2000 and 2003. Except as where indicated in this Opinion, the relevant terms and provisions are identical to the CBAs covering the period between 2003 and 2006.

2

it is subject to two distinct competition-leveling provisions. Unlike the Local 149 CBA, the Local 70 CBA specifies only that, in instances when wage and/or fringe-benefit differentials exist, "such higher wages and/or fringes shall be paid." '00–'03 Local 70 CBA Art. VIII § 1. In other words, the Local 70 CBA does not indicate to whom or to which fund fringe-benefit differentials are to be paid. A conflict thus exists between the differing CBAs.

The Local 70 CBA contains a $2.00 subsistence provision that is paid to each employee in addition to his or her base wage. Although the provision falls under Article XIV: Travel Expenses & Subsistence Pay, all employees receive this $2.00 increase for every hour worked, regardless of whether they incur travel costs. Defendants initially treated the sum as a wage instead of a fringe benefit, which resulted in a fringe-benefit differential, and Defendants paid the differential to Plaintiff. Such treatment is evidenced by the fact that the parties signed a December 2003 Payment Agreement whereby Defendants agreed to pay Plaintiff $58,629.78 in unpaid contributions arising from fringe-benefit differentials. Sometime in 2004, upon advice of counsel, Defendants stopped paying a fringe-benefit differential in response to this Court's decision in *Roofers Local 149 Joint Apprenticeship Fund v. Bloom Roofing Sys., Inc.* (*Bloom I*), No. 02-74452, slip op. (E.D. Mich. Mar. 22, 2004). In *Bloom I*, this Court granted summary judgment for a Local 70 roofing company, Bloom Roofing Systems, Inc., holding that "[u]nder the express terms of the '00–'03 Local 70 CBA, if any fringe benefit differential exists, it is to be paid to the Local 70 funds, not the sister local's funds." *Id.* at 9. Consequently, Defendants ceased payment of any fringe-benefit differential to Plaintiff.

In 2005, the Sixth Circuit Court of Appeals reversed and remanded the *Bloom I* decision, holding that the Local 70 CBA did not unambiguously direct that fringe-benefit differentials be paid

to the Local 70's funds. *Roofers Local 149 Joint Apprenticeship Fund v. Bloom Roofing Sys.* (*Bloom II*), 134 Fed. Appx. 39 (6th Cir. 2005). The *Bloom II* court remanded the matter to clarify the ambiguity and to determine the proper characterization of the $2.00 per hour subsistence provision. Desiring to limit additional litigation expenses, the parties reached a settlement without further consideration of the merits. Apparently on the strength of this Court's *Bloom I* decision, Defendants continue to refuse payment of fringe-benefit differentials, despite the fact that the $2.00 subsistence provision has been eliminated as of June 2007, resulting in a fringe-benefit differential.

An audit conducted by Plaintiff disputed Defendants' treatment of the $2.00 subsistence provision and concluded that Defendants owe Plaintiff benefit contributions in an amount exceeding $98,000 for the period of June 2003 through August 2006. Plaintiff brought suit, seeking recovery of the unpaid contributions in the amount of $98,983.90; an order that the audit be updated from September 2006 through present; and a supplementation of the Judgment granted based on all due and owing amounts determined by the updated audit and the mandates of 29 U.S.C. § 1132(g)(2) upon further submissions to the Court.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to

support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff argues that the $2.00 subsistence provision is actually a wage. When classified as such, a fringe-benefit differential exists and thus, according to Plaintiff's view, Defendants owe Plaintiff these past-due amounts. Defendants respond that the Sixth Circuit has previously ruled in such a manner that leaves ambiguity as to how the $2.00 subsistence provision is to be interpreted. Defendants also argue that the $2.00 subsistence provision eliminates the fringe-benefit differential claimed by Plaintiff and that the provision does not constitute a wage.

The issue before the Court requires interpretation of both the Local 70 and the Local 149 CBAs. The plain meaning of a CBA is to be given significant deference as the intent of the signatories. *See, e.g.*, *Brown-Graves Co. v. Cent. States, Se. & Sw. Area Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). In the event that a CBA contains ambiguous language, the Court may look to past practices of the parties for clarification. *Cement Div., Nat'l Gypsum Co. v. United Steelworkers*, 793 F.2d 759, 766 (6th Cir. 1986) *overruled on other grounds by Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746 (6th Cir. 2007).

Article XIV of the Local 70 CBA, entitled Travel Expenses and Subsistence Pay, provides for the $2.00 subsistence provision that figures so prominently in this dispute: "All employees shall

5

receive an hourly subsistence of TWO DOLLARS ($2.00) FOR EACH HOUR OR PARTIAL HOUR WORKED. IN ADDITION, TRAVEL PAY SHALL BE PAID AS FOLLOWS . . ." '00–'03 Local 70 CBA Art. XIV § 1. The Local 70 CBA also includes a competition-leveling clause, which provides that "any contractor performing work under this AGREEMENT and working in a sister locals [sic] jurisdiction that has wages and/or fringes higher than those contained in this collective bargaining agreement such higher wages and/or fringes shall be paid." '00–'03 Local 70 CBA Art. VIII § 1.

The Local 149 CBA includes a competition-leveling provision as well. The Local 149 provision, however, differs from the Local 70 competition-leveling provision in that it specifies that visiting contractors pay any fringe differential directly to Plaintiff:

> An Out-Of-Town Contractor on a job within [Local 149's jurisdiction] will pay visiting roofers . . . whichever total package of wages (including vacation pay) and fringes are higher–either their Local Union package or the Local 149 package. Vacation pay is considered wages for the purposes of this Article. If the Local 149 package is higher due to wages, visiting roofers will be paid the difference in wages. If the Local 149 package is higher due to fringes, the difference will be paid to [Plaintiff].

'00–'03 Local 149 CBA Art. 31 § 2(b). The *Bloom I* court interpreted these same provisions in virtually the exact context as they arise here. *Bloom I* held that Article VIII of the Local 70 CBA unambiguously directed fringe-benefit differentials to Local 70's own funds. Put more simply, the *Bloom I* court held that Article VIII of the Local 70 CBA foreclosed Plaintiff from recovering fringe-benefit differentials.

On appeal, the Sixth Circuit reversed the *Bloom I* decision, finding that Article VIII "is susceptible to two plausible interpretations." *Bloom II*, 134 Fed. Appx. at 44. In particular, the court noted that it "is [also] plausible to read Article VIII as allowing other local unions' funds to

6

receive the increase in fringe-benefit payments when employers operate in their areas." *Id.* *Bloom II* faced substantively the same issue as that present in this case: whether differential payments were due and owing. In its analysis, the court observed the usefulness and appropriateness of considering extrinsic evidence before identifying an ambiguity for the limited purpose of determining whether two or more plausible interpretations exist. *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Apogee Coal Co.*, 330 F.3d 740, 747 (6th Cir. 2003)). Therefore, the *Bloom II* court examined the Roofers Union Constitution, which seemed to suggest that the CBA of the jurisdiction in which work is performed governs the destination of fringe-benefit differentials:

> If a contractor has been paying into any of the above mentioned funds in his territory he shall not be obligated to pay into another fund, unless after paying the higher wages to his employees and paying all contributions into all of its established funds, the total package is still below that of the sister Local Union's territory, in which case the employer shall be obligated to pay the difference into whatever fringe benefit funds the sister Local Union has provided for in its collective bargaining agreement.

Roofers Union Const. art. II, § 2. After considering relevant extrinsic evidence and concluding that an ambiguity existed, the *Bloom II* court declined to grant summary judgment because it did "not believe that Article VIII of the Local 70 collective bargaining agreement unambiguously restricts funds like Local 149 JAF [Joint Apprenticeship Fund] from recovering fringe-benefit payments from employers like Bloom who operate outside of Local 70's jurisdiction." *Bloom II*, 134 Fed. Appx. at 44.

In this case, Defendants are signatories to both the Local 70 and the Local 149 CBAs, which are identical in all relevant parts to the CBAs construed by *Bloom I* and *Bloom II*. The Local 70 CBA is ambiguous regarding the proper recipient of fringe-benefit differentials. *See Bloom II*, 134 Fed. Appx. at 44. The Local 149 CBA directs that such differentials be paid to Plaintiff. The

reconciliation of these competing provisions raises a question of fact. Accordingly, the Court finds that the existence of competing, viable interpretations of the CBAs precludes an entry of summary judgment.

## V. CONCLUSION

For the above reasons, Plaintiff's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

                                      s/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: February 8, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 8, 2008.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290